WMP:WK/JPL
F. #2011R02049

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

TISHMAN CONSTRUCTION
CORPORATION,

              Defendant.

- - - - - - - - - - - - - - - - -X

I N F O R M A T I O N

Cr. No. 15-CR-617 (CBA)
(T. 18, U.S.C., §§ 1349 and
 3551 et seq.)

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTION

        At all times relevant to this Information, unless otherwise indicated:

I.    The Defendant

        1.    TISHMAN CONSTRUCTION CORPORATION ("TISHMAN CONSTRUCTION") was a construction service corporation that provided construction, project management and consulting services on large-scale public and private construction projects. TISHMAN CONSTRUCTION, founded in 1898, was a privately owned company until July 2010, when it was purchased by a publicly traded company on the New York Stock Exchange.

        2.    TISHMAN CONSTRUCTION was one of the largest construction firms in New York City. In 2009, TISHMAN CONSTRUCTION had more than 500 employees, the majority of which worked in its New York, New York office. TISHMAN CONSTRUCTION provided construction services on numerous projects, including: (i) World Trade Center Towers One, Three, Four and Seven; (ii) the World Trade Center PATH Transportation Hub; (iii) the

New York City 9-1-1 call center; (iv) the Plaza Hotel renovation located in New York, New York, (v) the Javits Convention Center Expansion and Renovation Project, in New York, New York, and (vi) the Aqueduct Casino in Queens, New York.

II.     TISHMAN CONSTRUCTION's Construction Contracts

3. TISHMAN CONSTRUCTION's role on construction projects was typically that of a construction manager. This often required TISHMAN CONSTRUCTION to supervise the work done by subcontractors or trade contractors. As construction manager, TISHMAN CONSTRUCTION usually executed the construction management contract, which governed the "general conditions" costs. The "general conditions" costs included certain costs of the construction project not covered by trade contracts, such as daily trash removal and operation of the elevators and hoists on the construction site. It also included supplying workers from the Mason Tenders' District Council of Greater New York ("Local 79"), including its labor foremen (the "Labor Foremen").

4. The pay rates for TISHMAN CONSTRUCTION's union labor were defined by collective bargaining agreements that were negotiated and entered into with the Building Contractors Association ("BCA"). TISHMAN CONSTRUCTION, along with other construction management firms and members of the BCA, renegotiated the provisions of these agreements and entered into successor agreements with the BCA approximately every four years (collectively, the "BCA Agreement"). The BCA Agreement governed the pay rates of Local 79 workers, including the Labor Foremen. Specifically, prior to July 2010, the BCA Agreement provided that the Labor Foremen were guaranteed a particular hourly rate of pay, but they were not to be paid on sick days, vacation days or unworked holidays.

5.   The terms of the construction management contracts between TISHMAN CONSTRUCTION and its clients required TISHMAN CONSTRUCTION to: (i) bill clients for work actually performed by the Labor Foremen at the pay rates specified in the BCA Agreement (the "General Conditions Contract Rate"); or (ii) seek prior approval from its clients to bill Labor Foremen at pay rates in excess of the General Conditions Contract Rate.

6.   In order to track work actually performed by Local 79 workers, TISHMAN CONSTRUCTION required the Labor Foremen for each project to fill out a single time sheet, on a weekly basis, for the Labor Foreman and the Labor Foreman's crew. Thereafter, a TISHMAN CONSTRUCTION superintendent reviewed the completed time sheet for accuracy and either signed it or presented it to a project manager for signature. TISHMAN CONSTRUCTION used the hours listed on the time sheet to calculate the pay for the Local 79 workers and to send billing requisitions to TISHMAN CONSTRUCTION's clients.

7.   Public projects and certain projects involving public funding required the submission of certified payrolls, which included sworn statements by TISHMAN CONSTRUCTION representatives that the hours reflected in the billing requisitions accurately reflected the hours worked and paid by TISHMAN CONSTRUCTION to its union workers. TISHMAN CONSTRUCTION generated the certified payrolls for Local 79 workers using the same time sheets submitted by the Labor Foremen.

III.   TISHMAN CONSTRUCTION's Fraudulent Overbilling Scheme

8.   From at least 1999 through approximately October 2009, TISHMAN CONSTRUCTION, together with others, devised a scheme to defraud federal, state and local government contracting and funding agencies, as well as private clients, by falsely representing, and otherwise making materially misleading statements and omissions in billing requisitions,

certified payrolls and other documents submitted by TISHMAN CONSTRUCTION to agencies for public works contracts, and to its other clients on private construction projects, that: (i) all of the hours for which TISHMAN CONSTRUCTION billed its clients and paid its Labor Foremen were for hours actually worked when, in fact, they were not; and (ii) that the hourly wage rates at which TISHMAN CONSTRUCTION billed its clients for the work of all of its Labor Foremen were in accordance with the General Conditions Contract Rate when, in fact, they were not.

9. As part of this fraudulent overbilling scheme, TISHMAN CONSTRUCTION maintained a systemic practice, employed on virtually all of its projects, of: (a) adding one to two hours of unworked or unnecessary "guaranteed" overtime per day to the time sheets for Labor Foremen; (b) providing five hours of guaranteed overtime per day, whether worked or not, for a particular senior Labor Foreman, whose identity is known to the United States Attorney; and (c) allowing Labor Foremen to be absent from work for sick days, major holidays and one or two weeks of vacation per year, while TISHMAN CONSTRUCTION completed and submitted time sheets to its clients as though the Labor Foremen had worked those days. Additionally, from approximately 2005 through 2009, for a particular senior Labor Foreman, whose identity is known to the United States Attorney ("the Particular Senior Labor Foreman"), TISHMAN CONSTRUCTION, without seeking approval from its clients, billed its clients and paid the Particular Senior Labor Foreman at wage rates that exceeded the General Conditions Contract Rate.

10. TISHMAN CONSTRUCTION did not disclose to its clients that: (i) they were being billed for hours not actually worked; and (ii) the hourly rates they were being billed for the Particular Senior Labor Foreman exceeded the General Conditions Contract Rate. In

sum, TISHMAN CONSTRUCTION improperly billed its clients approximately $5,650,917.97 in connection with TISHMAN CONSTRUCTION's fraudulent overbilling scheme.

## CONSPIRACY TO COMMIT MAIL FRAUD AND WIRE FRAUD

11. The allegations contained in paragraphs 1 through 10 are realleged and incorporated as if fully set forth in this paragraph.

12. In or about and between January 1999 and October 2009, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant TISHMAN CONSTRUCTION CORPORATION, together with others, did knowingly and intentionally conspire:

(a) to devise a scheme and artifice to defraud federal, state and local government contracting agencies, as well as private clients, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to cause to be delivered matter and things by the United States Postal Service, and other private and commercial interstate carriers, according to the direction thereon, contrary to Title 18, United States Code, Section 1341;

(b) to devise a scheme and artifice to defraud federal, state and local government contracting agencies, as well as private clients, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be

transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

ROBERT L. CAPERS
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK